**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| BARBARA A. GIBSON individually, and as Personal Representative of the Estate of Johnny G. Gibson, JOHN TRAVIS MORGAN GIBSON, and DIXIE LEE GIBSON,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES, and DOES 1-10,<br><br>Defendants. | CV-18-112-GF-BMM<br><br><br><br>**ORDER** |

Decedent Johnny Gibson (Gibson) experienced chest pains, among other things, and visited Central Montana Community Health Center (CMCHC) on September 14, 2015. (Doc. 21-2 ¶ 1; Doc. 35 ¶ 1.) Gibson saw Nurse Practitioner Kimberlee Decker (Decker), who suspected gall stones. Decker referred Gibson to

1

receive an ultrasound on his gallbladder and prescribed him hydrocodone. (Doc. 21-2 ¶ 2; Doc. 35 ¶ 2.) According to Defendant United States, Decker told Gibson to follow up if his symptoms did not improve. (Doc. 35 ¶ 25.) Over the next week, Gibson's chest pain continued, his hands became cold, and he was unable to ride in a vehicle without getting out to walk and breathe. (Doc. 21-2 ¶ 3; Doc. 35 ¶ 3, 26.)

Gibson attempted to drive home to Colorado Springs, Colorado on September 21, 2015. (Doc. 21-2 ¶ 4; Doc. 35 ¶ 4, 28.) His chest pain continued, however, and he and his family stopped and called an ambulance. The ambulance transported Gibson to St. Vincent Hospital in Billings. (Doc. 21-2 ¶ 4; Doc. 35 ¶ 4.) Tests at St. Vincent revealed 99 percent blockage of Gibson's left main coronary artery, 99 percent blockage of his proximal circumflex artery, at least 60 percent blockage in each of his proximal, mid, and distal right coronary arteries, and 70 percent blockage in his right posterior atrioventricular. (Doc. 21-2 ¶ 6; Doc. 35 ¶ 6.) Doctors attempted to perform a three-vessel coronary artery bypass the next day. (Doc. 21-2 ¶ 7; Doc. 35 ¶ 7.) Gibson died during the surgery. (Doc. 21-2 ¶ 7; Doc. 35 ¶ 6.)

Gibson's wife and two children (collectively "Plaintiffs") filed a complaint with this Court in which they alleged claims for negligence and wrongful death and grief, sorrow, loss of society and companionship and loss of consortium. (Doc. 1 at 5-7.) Plaintiffs filed for partial summary judgment on the elements of breach of

2

duty, causation, and liability in the negligence claim. (Doc. 21-1.) The Government conceded on the issues of breach of duty and causation. (Doc. 34.) The Government maintained, however, that Gibson had been contributorily negligent in failing to provide all pertinent information to the staff at CMCHC and failing to seek follow-up care. The Government claimed that Plaintiffs' summary judgment motion should be denied as to liability for these two reasons. (*Id.*).

The Court held a hearing and asked the parties "to meet regarding the liability question in an effort [to] streamline the trial." (Doc. 40.) The parties submitted a joint proposal about how to address the issue of comparative negligence at trial. (Doc. 44.) Both parties have agreed on how to move forward on all issues raised in the motion for partial summary judgment, either by concession or stipulation. The Court need not discuss that motion any further.

At that same hearing, the Court heard argument on the United States's motion in limine to exclude the testimony of Plaintiffs' expert Dr. Ann Adair about "hedonic damages and [the] value of a statistical life for purposes of assessing Plaintiffs' damages." (Doc. 25.) Plaintiffs' conceded that they cannot receive hedonic damages under Montana law, but maintained that the testimony should be admitted for purposes of calculating other non-economic damages. (Doc. 37.)

Federal Rule of Evidence (FRE) 702 governs testimony of expert witnesses. The Ninth Circuit requires testimony to be both relevant and reliable under FRE

702. *See Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc). FRE 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), seek "to protect *juries* from being swayed by dubious scientific testimony." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (quoting *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012)); *see id.* (collecting cases). But when, as here, the Court holds a bench trial, "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Id.* The court may in those circumstances "make its reliability determination during, rather than in advance of, trial." *Id.* (quoting *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006). The Court will follow that procedure here. Should the expert testimony of Dr. Adair not satisfy the standards of reliability and relevance as required under FRE 702 and *Daubert*, the Court will exclude it or disregard it at the conclusion of her testimony. *See id.* Should her testimony satisfy FRE 702 and *Daubert*, this Court will issue findings of relevance and reliability at the end of her testimony.

## ORDER

Accordingly, IT IS ORDERED that Plaintiffs' Partial Motion for Summary Judgment (Doc. 21) is GRANTED, in part, and DENIED, in part. Plaintiffs' motion is granted with respect to the issues of breach and causation. Plaintiffs' motion is denied as moot with respect to the issue of comparative negligence. IT IS

ORDERED that Defendants' motion in limine (Doc. 25) is DENIED without prejudice.

DATED this 24th day of September, 2019.

Brian Morris
United States District Court Judge